### RIORDAN & CO. v. DOTY.

1. CONTRACT—COTTON FUTURES—REV. STAT., 1859-60-61—NONSUIT. A party bringing an action on a contract arising out of the future delivery of cotton must show (1) that the party making such contract was the owner or assignee thereof at the time the contract was made, or (2) that the seller was at the time authorized by the owner or assignee, or his duly authorized agent, to make such sale, or (3) that it was the *bona fide intention* of both parties, at time of making such contract, that the cotton should be actually delivered at such future time—*construing* Rev. Stat., 1859, 1860, 1861.

2. IBID.—IBID.—BROKER—AGENT—REV. STAT., 1861.—A broker or agent who places a contract in cotton futures, has no cause of action, under statutes of this State, for money advanced for his principal in filling such contract. Rev. Stat., 1861, *construed.*

3. ASSIGNEE—COTTON FUTURES.—An assignee of a claim for moneys advanced in filling a contract in cotton futures cannot maintain an action thereon in this State. Rev. Stat., 1861, *construed.*

4. EVIDENCE.—The rules and by-laws of the New York Cotton Exchange were properly excluded in this case, in absence of proof tending to show that defendant had assented to or knew of them.

Before WATTS, J., Fairfield, September, 1896. Affirmed.

Action by Riordan & Co., as assignees of Hanckel & Riordan, against William R. Doty, for moneys advanced by them to defendant in buying and selling cotton in New York Cotton Exchange. Judgment of nonsuit. Plaintiffs appeal on following exceptions:

I. For that his Honor erred in refusing to allow the plaintiffs to introduce in evidence the rules and by-laws of the New York Cotton Exchange, and in granting a nonsuit in the absence of the same from the testimony in the case.

II. For that his Honor erred in usurping the functions of the jury, when he held as follows: "The testimony in this case, taken as a whole, satisfies me that these parties here are claiming for losses on cotton futures; that the contract was in violation of the act of 1883, at the time this first contract was made, and all the way through; that there was no *bona fide* intention on the part of Mr. Doty, the defendant here, to deliver the cotton itself, or that he was the owner of any cotton, or that he was the assignee of any cotton."

III. For that his Honor erred in further invading the province and usurping the functions of the jury, when he held as follows: "Now, if this action was brought on the October cotton alone, there might be sufficient testimony to go to the jury to say whether there was a delivery of any spot cotton; but the testimony shows that they claim for cotton delivery in October, November and December, and there is not a scintilla of evidence to show that there was any purchase of cotton for November."

IV. For that his Honor erred, further, in invading the province and usurping the functions of the jury, in holding as follows: "There is some little testimony to show that there was some cotton, spot cotton, purchased in October, some 200 bales, but, taken in connection with Mr. Riordan's whole testimony, it shows that it was dealing in cotton futures, and according to the law as laid down in *Gist* v. *The Telegraph Company*, the plaintiffs have not furnished enough testimony to make proof required of them."

V. For that his Honor erred in granting a nonsuit, when there was sufficient evidence to go to the jury to show that Lehman Bros. and Hopkins, Dwight & Co., and other parties from whom Hanckel & Riordan, through whom plaintiffs claim, purchased cotton for the account of the defendant, were the owners of said cotton, and that it was the *bona fide* intention of the parties at the time of the making of the contracts to deliver, and to receive, the cotton in kind.

VI. For that his Honor erred in holding that the act of

1883, relating to contracts for the sale of articles for future delivery, was applicable to the facts of this case, when it appeared from the testimony that Hanckel & Riordan, through whom the plaintiffs claim, were not parties to any contract for such sales, but were simply the brokers of the defendant, and made contracts with other parties upon the orders and for the account of the defendant, and in granting a nonsuit in the case on that ground.

VII. For that his Honor erred in granting a nonsuit when there was evidence to go to the jury upon all the issues in the case.

VIII. For that his Honor erred in not holding that Hanckel & Riordan, having become the agents and brokers of the defendant, and bought and sold cotton for the account of the defendant, at his request, *were* entitled to recover for all losses paid by them or advances made in the discharge of their duty as such agents and brokers, and that the plaintiffs succeeded them in such right, and in not refusing the motion for a nonsuit upon that ground.

IX. For that his Honor erred in not holding, and refusing to grant a nonsuit, upon the ground that if there had been an illegal contract made between the defendant and other parties, the same had been ended, executed and terminated; and that if Hanckel & Riordan, through whom plaintiffs claim, advanced money upon the request of the defendant, either express or implied, to pay losses of the defendant on such contracts, the plaintiffs were entitled to recover the same from the defendant.

X. For that his Honor erred in not holding, and refusing to grant a nonsuit, upon the ground that the contract between Hanckel & Riordan, through whom plaintiffs claim, and the defendant was one of agency, and that the plaintiffs were entitled to recover for advances made by said Hanckel & Riordan, or for losses paid by them, for the account of the defendant and in the execution of such agency.

XI. For that his Honor erred in not holding, and refus-

ing to grant a nonsuit, upon the ground that the contract between the said Hanckel & Riordan and the defendant being one of agency, the plaintiffs were entitled to recover from the defendant for all losses paid or advances made for the account of the defendant, in the execution of their agency, unless it appeared that they had engaged in illegal transactions, and that if so, the burden was upon the defendant to show it.

XII. For that his Honor violated section 27 of article V. of the Constitution of the State, in undertaking to decide any question of fact, or to judge of the weight or sufficiency of the testimony in the case, when said section provides simply that he "shall declare the law."

XIII. For that his Honor violated section 25 of article I. of the Constitution of the State, by not submitting the issues of fact in the case to the jury.

*Mr. J. E. McDonald*, for appellant, cites: *Evidence sufficient to send case to jury:* 21 S. C., 101; 35 S. C., 576; 41 S. C., 158; 42 S. C., 466; 43 S. C., 537; 44 S. C., 317. *Error to rule out rules and by-laws of New York Cotton Exchange:* 149 U. S., 489; 29 S. C., 70. *Plaintiffs were agents of defendant, and, therefore, entitled to recover:* 149 U. S., 498; 121 Ill., 330; 12 N. E. R., 266. *Defendant cannot set up illegality of another contract to defeat recovery:* 3 DeS., 125; 1 Bail., 315; 28 S. C., 465; 45 S. C., 344; 149 U. S., 497. *If there had been a void contract, it had been ended:* 11 Wheat., 259; 108 U. S., 269; 133 U. S., 469; 12 S. C., 578; 45 Ga., 501; 2 N. & McC., 581. *Burden of illegality on defendant:* Rev. Stat., 1859, 1860; 14 S. C., 621. *Case should have gone to jury:* Con. 1895, art. I., sec. 25, art. V., sec. 26; 47 S. C., 488; 17 Wall., 663; 38 N. Y., 455; 131 Ind., 431; 17 Mich., 99.

*Messrs. Ragsdale & Ragsdale*, contra, cite: *Failure of proof on material point is total failure:* 34 S. C., 326; 23 S. C., 286; 29 S. C., 96; Rev. Stat., 1860; 45 S. C., 344. *Our Courts will not enforce gambling contracts:* 1 Strob., 82; 1

Bail., 489; 9 Rich., 262. *Plaintiff may admit testimony rendering nonsuit in invitum proper:* 23 S. C., 286.

Sept. 30, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. This was an action to recover from the defendant an alleged balance due Hanckel & Riordan for money advanced and cash paid for said defendant, between the 1st of September, 1891, and the 1st of December, 1891, by said Hanckel & Riordan, at the request and for the use of said defendant, the plaintiffs being the successors and assignees of the said Hanckel & Riordan, and as such the legal owners and holders of said claim.

The defendant, in his answer, denies each and every allegation in the complaint, except such as are therein afterwards admitted or qualified; and alleges, substantially, that the claim made by the plaintiffs is based upon and grew out of contracts for the future delivery of cotton, which were entered into by the said Hanckel & Riordan and the defendant on and after the 1st of September, 1891, which were illegal, void, and without effect. The only testimony offered by the plaintiffs was that of James Riordan, one of the plaintiffs, who was likewise one of the members of the said firm of Hanckel & Riordan, together with a cipher code, and sundry telegrams and letters sent Hanckel & Riordan by the defendant. The plaintiffs also offered to introduce in evidence the rules and by-laws of the New York Cotton Exchange for the year 1891, which was objected to on the ground that there was no evidence that the defendant had assented to the rules and by-laws, and they were ruled inadmissible, unless the knowledge of the same was brought home to the defendant.

At the close of plaintiffs' testimony, a motion for a nonsuit was made, upon the ground that there was no evidence "that at the time of the contracts, bargains or agreements, the seller was the owner or assignee of the 200 bales of cotton, or that it was the *bona fide* intention of both parties to the contract that the same should be actually delivered

and actually received by the parties thereto." This motion was granted, and judgment having been entered, the plaintiffs appeal, upon the several grounds set out in the record, which should be incorporated in the report of this case. We do not propose to consider these grounds *seriatim*, but will consider the several points raised thereby.

The act of 1883, now incorporated in the Revised Statutes of 1893 as secs. 1859, 1860, and 1861, or so much thereof as is pertinent to this case, contains the following provisions: "Sec. 1859. Every contract, bargain or agreement, whether verbal or in writing, for the sale or transfer at any future time of * * * any cotton * * * shall be void, unless the party contracting, bargaining or agreeing to sell or transfer the same, is, at the time of making such contract, bargain or agreement, the owner or assignee thereof, or is at the time authorized by the owner or assignee thereof, or his duly authorized agent, to make and enter into such contract, bargain or agreement, or unless it is the *bona fide* intention of both the parties to the said contract, bargain or agreement, at the time of making the same, that the said * * * cotton * * * shall be actually delivered in kind by the party contracting to sell and deliver the same, and shall be actually received in kind by the party contracting to receive the same at the period in the future mentioned and specified in the said contract, bargain or agreement." And in the next section (1860) it is declared that: "In any and all actions brought in any court to enforce such contracts, bargains or agreements, or to collect any note or other evidence of indebtedness, or any claim or demand whatever founded upon any such contract, bargain or agreement, the burden of proof shall be upon the plaintiff to establish that, at the time of making such contract, bargain or agreement, the party making the same was the owner or assignee of the * * * cotton * * * so agreed to be sold or transferred, or was at the time authorized by the owner or assignee thereof, or his duly authorized agent, to make and enter into such contract, bargain or agreement, or that at the time of mak-

ing such contract, bargain or agreement it was the *bona fide* intention of both parties thereto that the said * * * cotton * * * so agreed to be sold and transferred shall be actually delivered and received in kind by the said parties at the future period mentioned therein." And the provisions of sec. 1861 show very clearly that it was the intention of the legislature to put "any person who shall act as agent or middleman in the making or execution of any such contract" upon the very same footing as the parties to such contract. The manifest object of this legislation was to cut up by the roots all transactions for the purchase or sale of cotton or other products mentioned in the statute for future delivery, by declaring the same absolutely void, unless some one or more of the conditions mentioned in the statute were present at the time such transactions were entered into, and by imposing the burden of proof of the presence of one or more of such conditions at the time stated, upon the party bringing any action to enforce such contract, or any claim or demand whatever founded upon any such contract. So that it is very clear that when a plaintiff brings an action for either of those purposes, he must show either one or more of the following facts: 1st. That the party making the contract for the sale of cotton for future delivery was the owner or assignee thereof at the time the contract was made; or 2d. That the seller was at the time authorized by the owner or assignee, or his duly authorized agent, to make such sale; or 3d. That it was the *bona fide* intention of both parties—seller and buyer—at the time of making such contract, that the cotton should be actually delivered and received in kind at the future period mentioned. If, therefore, the transactions upon which the plaintiffs' claim in this case is founded, were transactions for the purchase or sale of cotton for future delivery; and if there was an absence of any testimony tending to show that either of the three essential facts above stated existed *at the time the transactions in question were entered into*, then, clearly, the action for a nonsuit was properly granted.

The first question to be considered is, whether the transactions between Hanckel & Riordan and the defendant were for the purchase and sale of cotton for future delivery. The testimony adduced leaves no doubt whatever as to this point. The first telegram sent by defendant to Hanckel & Riordan, bearing date 12th October, 1891, shows this beyond a doubt. As translated, it reads: "Buy for October delivery 200 bales of cotton. Buy for November delivery 200 bales of cotton. Buy for December delivery 200 bales of cotton. At your discretion, this evening or to-morrow." And the testimony of James Riordan, one of the plaintiffs, who had also been a member of the firm of Hanckel & Riordan, of whom plaintiffs were successors, only serves to make this more certain. · Indeed, this witness admits that some of the advances, upon which plaintiffs' claim rests, were made on contracts for the purchase of cotton for future delivery, and as it is admitted that a very large portion of the advances were paid by defendant, it would be impossible for the Court to ascertain, from anything found in the testimony, whether the balance now claimed arose out of contracts which were for the future delivery of cotton or not. Besides, the whole testimony of this witness clearly shows that all the transactions between the parties were for the purchase and sale of cotton for future delivery. Take, for instance, what this witness says about the purchase of cotton for October delivery, upon which the greatest reliance seems to be placed. In speaking of that cotton, the witness says: "It was bought for delivery on a contract made about two days before the delivery. Mr. Doty sent us the order *to buy these contracts*, and we bought them. Two days after that we were advised of delivery, *and asked Mr. Doty what to do.* He said receive them, and we did." The fact that the contract was made only two days before cannot affect the question, for the same principle would apply as if the time had been two weeks or two months, instead of two days; and that portion of the quotation from the testimony which we have italicized shows very plainly

that even the purchase of the cotton for October was for future delivery. Again the witness says: "These contracts were all made at the time for future delivery, but I don't call cotton bought on the 15th of October, for October delivery, bought for future delivery." The latter part of this answer states no fact, and is only an expression of the opinion of the witness, which goes for nothing. We must say that a careful examination of the testimony in this case leaves no doubt whatever upon our minds that the transactions between Hanckel & Riordan and the defendant were all transactions for the purchase or sale of cotton for future delivery, and that there is literally no testimony to the contrary.

This being so, our next inquiry is, whether there was any testimony tending to show either one of the facts which, as we have seen, were essential to the plaintiffs' right to recover. After a very careful examination of the testimony, we are compelled to say that we are unable to find any such evidence. The point to be established is, that *at the time of making the contract* for the sale of any of the cotton for future delivery, the seller was the owner thereof, or that the seller was authorized, by the owner or his duly authorized agent, to make such sale, or that it was the *bona fide* intention of *both* parties that the cotton should be actually delivered and received; and of this we find no evidence. The fact that, *after the contract was made*, the seller chose to deliver the cotton, as in the case of Hopkins, Dwight & Co., does not fulfill the requirement of the statute. As we understand it, in these dealings in "cotton futures," as it is called, the seller may, if he chooses, actually deliver the cotton contracted to be sold within the time specified, or, if he prefers, may accept or pay, as the case may be, the difference in the price, and so the buyer may, if he chooses, demand actual delivery, or accept or pay, as the case may be, the difference in the price. It was probably for this reason that the provision was inserted in the statute requiring a plaintiff, when he seeks to enforce

a contract for the future delivery of cotton, or any claim or demand founded upon such a contract, to show affirmatively that, *at the time when the contract was made*, the facts, or either one of them essential to his recovery, *then* existed. At all events, such is the requirement of the statute, and it must be enforced by the Court. The principles upon which this case rests, as well as the proper construction of the act of 1883, have been so fully considered in the recent case of *Gist* v. *Telegraph Co.*, 45 S. C., 344, that we do not deem it necessary to repeat here what is there said.

The position taken by appellants, that the provisions of the act of 1883 cannot be applied either to the plaintiffs or to Hanckel & Riordan, through whom they claim, as the latter were merely brokers or agents through whom the defendants made the contracts for the purchase and sale of cotton for future delivery, cannot be sustained. It is very certain that the plaintiffs can claim no higher rights than their assignors, Hanckel & Riordan, and the latter were certainly the agents or middlemen through whom the contracts in question were made by defendants. But, as has been hereinbefore said, such agents or middlemen are expressly put upon the same footing as the contracting parties by the terms of sec. 1861 of the Revised Statutes; and by the terms of sec. 1860, an action or any claim or demand whatever founded upon any contract for the sale of cotton for future delivery, is subject to the same requirements as an action to enforce such a contract. Certainly the claim or demand upon which the plaintiffs sue was founded upon contracts for the purchase and sale of cotton for future delivery; otherwise it has no foundation at all; for it is not pretended that Hanckel & Riordan made any advances whatever for defendant except upon such contracts. The cases of *Andersons* v. *Moncrieff*, 3 DeS., 125, *Owen* v. *Davis*, 1 Bail., 315, and *Tate* v. *Peguies*, 28 S. C., 463, relied upon by appellants, are not applicable, as is shown in *Gist* v. *Telegraph Co.*, *supra*, where these cases

and others of like character are commented on. The action here is not for the recovery of money received by defendant, which belongs to the plaintiffs, but, on the contrary, it is for money advanced and expenses paid by Hanckel & Riordan on account of the defendant in fulfilling void contracts. Besides, appellants overlook, in their argument, the fact that this case is governed by a statute which expressly puts agents or middlemen upon the same footing as the contracting parties, and prohibits the recovery of any claim or demand founded upon contracts for the future delivery of cotton, except upon the conditions declared. This position cannot, therefore, be sustained.

So, too, the fifth point made by appellants in their argument, "that if there had been a void or illegal contract entered into between the defendant and other parties through Hanckel & Riordan, the same had been ended, executed, and terminated, and that the plaintiffs, who claim through said Hanckel & Riordan, could recover for the losses that they had paid for the defendant on said contracts," cannot be sustained; for here, again, the fact that this matter is controlled by the express provisions of the statute is overlooked. The action here is for the recovery of money advanced and expenses incurred, voluntarily, in fulfilling contracts, made by said Hanckel & Riordan on account of defendant, which are expressly declared by statute to be void, and which, therefore, the defendant was under no legal obligation to perform, and under the express provisions of the statute, the same cannot be recovered.

The only remaining inquiry is, whether there was error in ruling that the by-laws and rules of the New York Cotton Exchange were inadmissible in evidence before it was shown that the defendant either knew of or assented to such rules. We are unable to see how such rules would be competent evidence against the defendant, before any evidence was introduced tending to show that defendant assented to or knew the terms of such rules

and by-laws; and that was the extent of the ruling of the Circuit Judge. The fact that some reference was made in Shepperson's telegraphic cipher code, which seems to have been furnished to the defendant, cannot affect the question, for such reference did not disclose the scope or purport of the rules and by-laws of the New York Cotton Exchange. If the parties dealing with the defendant desired or expected the defendant to be governed by such rules and by-laws, it was their duty to have brought their provisions to his attention, which does not appear to have been done. Besides, parties who did not assent to those rules were under no legal obligation to be bound by them, and if they chose to make contracts not in accordance with such rules, such contracts must be construed by their own terms, and not by rules of the New York Cotton Exchange.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.